Argued February 11, reargued February 14, reversed and
remanded April 27, 1960

## STATE OF OREGON v. ROLLO

351 P. 2d 422

*Dan M. Dibble,* Portland, argued the cause and filed a brief for appellant.

*David Robinson, Jr.,* and *Oscar D. Howlett,* Deputy District Attorneys, Portland, argued the cause for respondent. On the brief was Charles E. Raymond, District Attorney, and David Robinson, Jr., Deputy District Attorney, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

SLOAN, J.

Defendant was convicted of third degree arson. He appeals. A resume of the facts is necessary before consideration of the assignments of error.

For several days prior to May 8, 1958, a number of small fires occurred in an area of Portland just east of the Morrison Street bridge. Investigators for the fire department believed the fires to have been manmade. During the early morning of May 7, 1958, such a fire was started in some discarded paper bags piled on the loading dock of the Peyton Bag Company situated on East Water Street. The fire department investigators decided to set a trap or stake out at the

bag company. It was arranged with bag company employees to have similar paper bags piled on the dock on that night, May 7, 1958.

Two investigators of the fire department stationed themselves in a nearby car to await results. To avoid being detected by anyone approaching, it was necessary for the two investigators to park their car at a spot which precluded them from actually seeing the paper bag decoy. About 1:00 a. m. of May 8, 1958, the person later identified as defendant was seen, by the investigators, in the area under surveillance. At about the same instant the bags were observed to be on fire. Defendant was the only person seen in the vicinity. He was apprehended.

A short time later, about 2:00 a. m., after the fire was put out, defendant was questioned by the two fire investigators at the east side police station. Except for a coffee break for the two interrogators, defendant was questioned until about 5:30 that morning. At that time he signed a statement admitting that he had dropped a match on the paper bags. Defendant was then taken to the west side police station and booked for arson. On the way there the investigators and defendant stopped for coffee at a restaurant. They arrived at the west side station about 7:00 a. m.

At 9:00 a. m. of that day defendant was further questioned by two detectives of the police department. At about 11:30 a. m. he signed a further admission. The second alleged admission contained a statement that "I have known for some time that I have a homosexual problem, which I have suppressed. He attributed the fire starting to frustrations or tensions created by resisting the tendency.

We mention the last admission for two reasons. One is that defendant assigns as error the admission

into evidence of the written statements made by defendant. The admissibility of the last statement, in particular, presents a problem. To question a person at such length is enough to cast doubt on the voluntary character of the statement. In this instance, however, the experienced trial judge did not admit the statements until the officers responsible and defendant were questioned at considerable length in chambers. Our consideration of the "totality of the circumstances" of the entire record, *Fikes v. Alabama,* (1957) 352 US 191, 197, 77 S Ct 281, 1 L Ed2d 246; reh. den. 352 US 1019, convinces us that the trial judge did not commit "manifest error" in admitting the statements. *State v. Nunn,* (1958) 212 Or 546, 554, 321 P2d 356. The jury was correctly instructed with reference to its consideration of the statements made by defendant.

■ An issue is made that the two statements in question were merely admissions and not confessions. We agree that the first statement made by defendant to the two investigators of the fire department was no more than an admission. The second statement presented a more serious question. The trial court treated it as a confession. There is no occasion now to determine if the statement was actually a confession. Any distinction previously existing between receiving into evidence an admission or a confession was abolished by the 1957 legislative assembly. In that session ORS 136.540 (1) was amended to require the same limitations on the admission into evidence of either an admission or a confession.

The pertinent subsection of the statute now reads:

"(1) A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against him when it was made under the influence of fear pro-

duced by threats; nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed."

Prior to the amendment the statute was limited to confessions. This case was tried in July, 1958.

■ Our second reason for mentioning the statements is to settle questions that may be raised on retrial. It has been mentioned that defendant, at the trial, denied the voluntary character and truthfulness of the admissions made. It then became proper for the prosecution to attempt to prove the truth of the statements made in the alleged admissions. This included, of necessity, cross-examination of defendant to determine if it were true that defendant had admitted to the officers that he was subject to a homosexual tendency. When defendant was being cross-examined he was asked:

"Q. "It says, [referring to the alleged written admission] 'I have known for some time I have a homosexual problem which I have suppressed;' is that true?

"A. Not necessarily. That is their assumption.

"Q. Didn't you state in open Court in Judge Redding's Court, that you were a boy lover?"

Objection was made and the objection sustained.

■ We think the objection should not have been sustained. Defendant's denial of the statements made in the alleged admissions put the truth of the statements contained therein in issue. The question and the answer which it invoked did degrade defendant; nevertheless, this was a proper method of testing the witness' credibility. When defendant challenged the accuracy of the written confession it became proper to introduce similar statements made upon other occasions.

If, upon retrial, defendant again denies that he made that statement to the officers it would be proper to show that such an admission was made. It would not be proper to inquire into the extent of the alleged homosexual tendency or the form or character the inclination may take. The subject is a touchy one and any reference to the subject should be limited to proving the truth or falsity of the alleged admission. The matter of homosexuality should not be extraneously mentioned during the course of the trial as it was in the trial of this case. In fact, the court was obliged to admonish the prosecuting attorney more than once to refrain from mention of the subject. That should not be necessary. Defendant should be tried for the crime of arson, not a sexual offense.

The decisive assignment of error involves unwarranted questions asked of defendant on cross-examination. When the prosecutor cross-examined defendant, he attempted to impeach defendant by proof of prior convictions. Earlier in the trial objections had been made and sustained to the police officers' mention of defendant's criminal record. During the later examination of one of these officers the prosecutor made the unprovoked statement that he could not inquire into defendant's previous "capers" with the law.

■ The record we will recite is only a part of all of the questions asked defendant about prior convictions. Before the following part of the trial occurred the prosecutor had questioned defendant at some length about a burglary conviction in New York state. There was some confusion in the questioning and in the manner by which the record of this conviction was offered. The court then called the attorneys to the bench and, out of hearing of the jury, advised: "Certified copies of records of conviction are admissible,

not hearsay." Then followed a running discussion between the prosecutor and defendant, as a witness, about certain conversations which apparently occurred between defendant and the prosecutor in preliminary matters prior to trial. After unsuccessful attempts to get defendant to admit certain offenses, the most serious of the prosecutor's errors occurred:

"Q. (By Mr. Robinson) Do you recall of being convicted of a crime in Red Bank, New Jersey?

"A. I was not convicted.

"Q. What happened?

"THE COURT: Let's not go into that. Do you have a record here?

"MR. ROBINSON: Your Honor, I was given this case about a week ago and we have written for records.

"THE COURT: Unless you have it, it is not proper inquiry.

"MR. JORDAN: I did ask the court to watch the district attorney, he was attempting to bring in such evidence and not having the record here is highly prejudicial.

"THE COURT: The Court just indicated that it isn't proper.

"MR. ROBINSON: I believe, your Honor, the defendant has indicated some incident in Red Bank, New Jersey.

"THE COURT: He has indicated he was not convicted. If you have evidence to the contrary, you may show it.

"MR. ROBINSON: Will counsel stipulate to the admission of this FBI sheet?

"THE COURT: Record of conviction, gentlemen, is either by admission, if an admission is given, or by a certified copy of record with a three-way certificate. Isn't that what the law says?

"MR. JORDAN: Without looking at this, your Honor, I will not stipulate to accept it. I do not know what it says.

"THE COURT: The FBI record, how does that become admissible to establish prior convictions?

"MR. ROBINSON: I thought if counsel could stipulate that the FBI record is a true record of the defendant's activities, he would admit it and I would be through.

"THE COURT: The objections will be sustained, if you are objecting to it, is that what you are doing now?

"MR. JORDAN: Yes, I am, your Honor.

"Q. (By Mr. Robinson) Do you recall a conviction in the City of New York with respect to tampering with a Poor Box in the Catholic Church?

"MR. JORDAN: Your Honor, we are right back at the same place and I will object to any such question. The district attorney is attempting to bring in what even might be hearsay evidence.

"THE COURT: Do you have any record of the conviction of that?

"MR. ROBINSON: I have no certified copy of this.

"THE COURT: If you don't have it, let's abandon this inquiry."

■ The reference to robbing the poor box after two admonitions from the court was prejudicial. The prosecutor might just as well have asked if defendant were still beating old ladies in wheel chairs or small children. The reference to the FBI sheet in the presence of the jury was almost equally as reprehensible. Obviously, defendant's attorney could not stipulate to the admission of such a record. Yet his refusal to do so, under the circumstances, could clearly prejudice his client in the minds of the jurors. The prosecutor should

have known that his request for a stipulation of that nature in the presence of the jury was improper.

■ *State v. Gilbert,* (1932) 138 Or 291, 294, 4 P2d 923, contains a simple and understandable procedure to be followed in confronting a witness with a criminal record. It is proper to ask a witness if he has ever been convicted of a crime. This may be done with or without a record of conviction being available. If the witness answers "No," that is the end of the interrogation. If an authenticated record to refute the negative answer is available it may be introduced to show an actual previous conviction of crime by the witness. Or, the record may be introduced in the first instance, without a preliminary question to the witness, to show previous convictions. That, however, is the limit permissible by our procedure. It requires no imagination to realize the effect upon a jury and the impingement of the character of a witness if the interrogator is permitted to inquire: "Weren't you convicted of burglary in New York, or sodomy in Indiana, etc.," ad infinitum, without any record to warrant such questions. All a witness could do would be deny. The imprint upon the minds of some or all of the jurors might not be erased by mere denial when the suggestion is once implanted. The statute, ORS 45.600, permitting impeachment of a witness by evidence of a conviction of crime does not contemplate the latitude used in this case.

In *State v. Motley et al,* (1928) 127 Or 415, 419, 420, 272 P 561, it was held to be reversible error to ask a defendant about an unlawful marriage. "A defendant witness cannot be cross-examined at large to other offenses: [Citing cases]." If it was reversible error to inquire about a marriage within six months following a divorce, it must follow that to ask a defendant if he has robbed the poor box is stronger cause

for reversal. We cannot weigh or know the effect upon the jury of these questions. *State v. Barton,* (1914) 70 Or 470, 142 P 348. A comprehensive note on the subject: "The Nature and Consequences of Forensic Misconduct in the Prosecution of a Criminal Case" is found at 54 Col L R 946 (1954).

This court will not sustain verdicts of conviction gained by the tactics used in this case. A person charged with crime must be tried on the basis of proper evidence presented by the rules known to every law school graduate. He shall not be tried by innuendo and pettifoggery. The prosecutor is entitled to hit as hard as he can above, but not below, the belt.

> "* * * But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Justice Sutherland in *Berger v. United States,* (1934) 295 US 78, 55 S Ct 629, 79 L Ed 1314 at p 1321.

The conduct of the prosecutor in this case denied defendant a fair trial. We have no recourse but to reverse and order a new trial.

We have considered the other assignments and conclude that they do not merit discussion.

Reversed, new trial ordered.

ROSSMAN, J.

I dissent from the ruling which reverses the judgment of conviction. It should be affirmed.

I am aware of nothing in the record which warrants the majority in casting doubts upon the admissibility of the two papers which the defendant signed upon the morning of his arrest and in which he ad-

mitted that he cast a match into the material upon the Peyton Bag Company's premises. The issue concerning the admissibility of those two papers was submitted to the jury upon an assumption that the papers were confessions and the jury was then given all of the rigorous rules applicable to confessions. Since the jury found the defendant guilty, they necessarily concluded that the papers constituted his voluntary utterances.

The majority, referring to the two papers, state:

"* * * Any distinction previously existing between receiving into evidence an admission or a confession was abolished by the 1957 legislative assembly. In that session ORS 136.540 (1) was amended to require the same limitations on the admission into evidence of either an admission or a confession."

I can not concur in that statement. Oregon Laws 1957, ch 567, § 1 [now ORS 136.540 (1)], states:

"A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against him when it was made under the influence of fear produced by threats * * *."

I do not believe that that section places admissions upon the same basis as confessions, nor do I believe that the majority is justified in citing *Fikes v. Alabama,* 352 US 191, 77 S Ct 281, 1 L Ed 2d 246. Confessions are admissible in evidence only if made freely and voluntarily. If the purported confession offered by the state was induced by expectations of a promised benefit or by the fear of a threatened injury or was given by the accused as a result of the employment of any other improper inducement, it is not admissible in evidence. Many courts exclude a confession if deceit

was employed by those who obtained it or if the accused was of low grade mentality. The confession must be in fact an utterance of the accused's conscience. Admissions, until the adoption of Oregon Laws 1957, ch 567, § 1, were never subjected to the rigorous demands imposed upon confessions. The accused's impaired mentality or the fact that he claims he was deceived went to the weight of the admission but not to its admissibility. Confessions were deemed admissible only in the event that a preliminary hearing before the trial judge indicated prima facie that the confession was an utterance of the conscience. In the end the jury determined that very matter. It will be noticed that the 1957 act excludes an admission only if "it was made under the influence of fear produced by threats." The majority, therefore, has no warrant for its statement, "Any distinction previously existing between receiving into evidence an admission or a confession was abolished by the 1957 legislative assembly."

The trial of all criminal cases will be materially slowed down if from now on the trial judge must exclude the jury while he conducts a preliminary hearing into the admissibility of each admission that the state claims the defendant made regardless of whether the defendant claims that any threats were employed. Likewise, the instructions in jury cases will be materially lengthened if the trial judge is required to give to the jury concerning admissions the extensive instructions commonly associated with the admissibility of confessions.

Although I agree with the majority that no error was committed when the trial judge overruled the defendant's objections to the testimony concerning the defendant's sexual irregularity, I believe that that testimony was admissible for a better reason and

purpose than those recognized by the majority. I will now state them. The defendant had explained to the two firemen his presence at 1:30 a. m. in the lonely industrial district where the Peyton Bag Company plant is located by saying that he had a homosexual problem which he was seeking to overcome by walks at night and by avoiding his former associates. That was his explanation for his presence on foot at the scene of the fire at 1:30 in the morning. He also mentioned to the firemen a tension which he experienced and which he attributed to homosexuality. Then, according to him, "after lighting my cigarette, I just thought 'to hell with it,' and threw the match on one of the small paper bags." From the defendant's own explanation, given in that way, we see that his reason for committing the crime could not be adequately given to the jury without mentioning his sexual abnormality. The evidence just mentioned accounted for his presence at 1:30 a. m. in an area visited by very few pedestrians at that hour and also for his abnormal act in casting the match. It was admissible for those reasons.

The majority reverses the judgment of conviction because the state attempted to question the defendant about his criminal record. First of all, we must bear in mind that all objections which the defendant made to the district attorney's questions were promptly sustained and the trial judge ruled that only a certified copy of a judgment of conviction was admissible to establish a purported past conviction. No evidence pertaining to past convictions of the defendant, to which the defendant objected, was received. Next, we must remember that it was the defendant himself who opened up the subject of his past criminal record. The state did not enter upon that subject until the defendant, upon his direct examination, had voluntarily done

so. In other words, the state asked the defendant its questions upon cross examination after the defendant, by testifying upon the subject, made it a proper subject for cross examination. We must also bear in mind that the record contains certified copies of judgment records which show that the defendant has been twice convicted of serious crimes and has served sentences of six months and one year. Upon cross examination the defendant acknowledged that the judgments of conviction were entered against him and that he had served the sentences.

The defendant does not contend that any objection which he made to the questions of the district attorney was overruled or that any evidence was received to which he had objected. He does not claim that he had moved for a mistrial or that during the trial he even once used the word "prejudicial" in referring to the efforts of the deputy district attorney to reveal his past record. The transcript shows that in some instances when the district attorney sought to ask the defendant a question concerning his criminal record the trial judge, without waiting for an objection, stopped the district attorney with the ruling, "Let's not go into that," or "Let's abandon this inquiry." At times the trial judge asked the district attorney, "Do you have a record here?" and when the district attorney replied that he did not, the trial judge declared, "Unless you have it, it is not proper inquiry." Therefore, the defendant's contentions do not concern any objection which was overruled for none was overruled. The majority's holding has as its basis a belief that the mere fact that the district attorney asked the questions prejudiced the defendant. The defendant did not claim during the brief period in which the foregoing questions were asked that any one of them had

prejudicial tendencies. In fact, his counsel did not use that word even once. The essence of the majority's holding is that a mistrial should have been declared upon the trial judge's own motion because the district attorney asked the defendant questions about his criminal record. The defendant did not at any time move for a mistrial. That fact is significant. Surely the jury must have realized from the trial judge's rulings that only a certified copy of a judgment of conviction was admissible to prove a conviction.

It is highly important in considering this contention to bear in mind that it was the defendant himself who projected into this case his past criminal record. He did so voluntarily. He opened up the subject while under direct examination by his own attorney.

Before speaking of his criminal record the defendant testified that he was born in New York City July 28, 1920, to an unwed mother. According to him, he was not certain that the woman in whose home he lived was his mother. As he narrated his experiences as a young fellow he gave the following testimony upon direct examination:

"Q  Were you ever in difficulty with the law while you were in New York, while you were a juvenile?
"A  Yes.  *  *  *

  *  *  *

"Q  Were you ever in any difficulty with the law in New York?
"A  Yes, when I had asked my mother as a kid for some help.

"Q  How old were you at that time?
"A  When I had just graduated from high school and roughly about sixteen or seventeen.

"Q What difficulty did you have with the law?

"A I asked my mother for some help and she said, 'I can't give you any help, get out of here. Don't be around the school,' and threatened me and called the police. I was picked up for vagrancy. I said then, before that I said truthfully, 'Are you my mother?'

"Q Let's get back to the question, Mr. Rollo. I am asking you what other difficulty did you have with the law.

"A I was hungry. I went back to the same school I was graduated from. I knew the school and had been there for four years. The only thing I did was to go into the refectory and get a loaf of bread, a piece of salami, and a glass of milk. I waited to see the prefect Father Dominic.

"Q What was the charge placed against you for that?

"A Burglary.

"Q Were you tried for that?

"A Not necessarily. No—I pleaded guilty."

The defendant added that he received a sentence of one year.

I repeat that it was the defendant who projected into the case his past criminal record. Following the above, and upon the defendant's cross examination, the court received in evidence a certified copy of an indictment which had been returned in Westchester County, New York, against the defendant in December of 1937. The indictment charged the defendant with burglary in the 3rd degree. The trial judge also received in evidence a certified copy of a judgment of conviction entered against the defendant upon his plea of guilty to the charge of burglary in the 3rd degree and which sentenced him to one year imprisonment in the Westchester County Penitentiary and Work-

house. Shortly the court received a certified copy of the records of the city court of New Rochelle, New York, which consisted in part of a criminal information entered against the defendant upon the complaint of Reverend Patrick Corcoran which averred that the defendant entered a school building "with intent to commit a crime therein * * * and taking, stealing and carrying away from therein a check drawn on the Huguenot Trust Company in the amount of $22.48 * * * payable to Reverend Joseph Costanzo * * *." The record contains an entry that the defendant plead guilty May 14, 1937, and received a sentence of six months.

The defendant testified that the Reverend Patrick Corcoran "taught me English" in Resurrection High School. He volunteered the statement, "I know Father Costanzo. Father Costanzo was the director of the school." The paper just described was received in evidence without objection. After the above testimony had been given indicating that two judgments of guilty had been entered against the defendant the questioning took place concerning still other crimes that are mentioned in the majority opinion.

The evidence concerning the defendant's conviction of other crimes, which the state sought to elicit through the defendant's cross examination, would have been cumulative because, as is apparent from the foregoing, certified copies of the defendant's conviction of two crimes had already been received.

ORS 45.600 says:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence * * * but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or

by the record of the judgment, that he has been convicted of a crime."

Thus, our statute contemplates that the accused may be questioned concerning his past. *State v. Bacon,* 13 Or 143, written by Mr. Justice LORD, authorizes a considerable degree of latitude in the examination of a witness as to his past.

There is no contention that the trial judge in the case at bar failed to give close attention to the cross examination of the defendant. As is shown in preceding paragraphs of this opinion the trial judge did not wait for an objection when the district attorney sought to ask the defendant a question concerning his past conviction of crime. He ruled promptly that unless the district attorney possessed a certified copy of a judgment of conviction he could not ask the defendant any questions upon the subject. The rule employed by the trial judge was more stringent than our law authorizes, but the error was favorable to the defendant.

As has been said, the defendant's counsel did not claim even once that the district attorney's questions concerning the defendant's past convictions of crimes had a prejudicial effect. Nor did he move for a mistrial or ask that the judge instruct the jury to disregard the district attorney's questions. After the close of the trial the defendant moved for a new trial and assigned as the basis for his motion these grounds:

"(1) The verdict of guilty which was returned by the jury was given under the influence of passion and prejudice.

"(2) There is insufficient evidence to justify the verdict.

"(3) There was error in law occurring at the trial and excepted to by the defendant."

The motion was accompanied by an affidavit signed by defendant's counsel which explained the basis of the first of the above contentions by stating:

"(1) The verdict of guilty which was returned by the jury was given under the influence of passion and prejudice in that; the introduction of testimony by the District Attorney attempting to show that the defendant was a homosexual was incompetent, irrelevant and immaterial and was introduced for the sole purpose of prejudicing the jury against said defendant, contrary to Section 11, Article I of the Constitution of the State of Oregon which provides that the accused shall have a right to public trial by an impartial jury in the exercise of due process of law."

Neither the statement nor the motion made any intimation that the questions concerning the defendant's past had had a prejudicial effect.

If a question propounded to a witness is capable of a prejudicial effect that fact becomes immediately apparent when the question is uttered. No one can discern the nature of its effect better than the trial judge. No one is more likely to claim prejudice than the defendant's attorney. The fact that the defendant's attorney did not object even once on the ground of prejudice while the foregoing questions were asked is significant. Likewise, the fact that the trial judge, who was able and experienced and who carefully guarded the defendant's rights, did not even threaten the deputy district attorney with the ordering of a mistrial can properly be deemed an indication that he did not believe that the questions were asked in bad faith or had a prejudicial effect. The facts just mentioned warrant a belief that neither the trial judge nor defendant's counsel discerned in the questions any prejudicial tendencies.

The trial judge made it apparent while the few questions were being asked of the defendant concerning his past that a conviction of a crime can be established only by a certified copy of the court record. Two court records showing the defendant's conviction of crimes in New York were received in evidence and, accordingly, they exemplified to the jury what was necessary in order to warrant a belief that the defendant had been convicted of other crimes. It is impossible to believe that the jury were misled by the district attorney's questions.

The above is the situation. The evidence as to the defendant's guilt is more impressive than one encounters in most criminal cases. I add that the evidence shows that the defendant had recently set three other fires in virtually the same manner as this one and in the same neighborhood. One of them was set in the same part of the Peyton Bag Company's building as the fire of May 8, 1957. It was ignited May 7, 1957. The other two fires were ignited in substantially the same manner as the fire of May 8, 1957.

The question now occurs as to whether any rule of law authorizes a reversal of the judgment of conviction upon the sole ground that the district attorney asked the foregoing questions. In *Mills v. Liquidators*, 206 Or 212, 288 P2d 1060, this court, through Mr. Justice PERRY, said:

> "Defendant did not file a motion to strike the allegations claiming damages for nervous mental shock. Neither did the defendant object to the evidence as introduced upon this issue, nor did the defendant object to the court instructing the jury upon this measure of damages. So in the language of this court: '* * * Be it so; but it is not error simply, but error legally excepted to that consti-

tutes ground for reversal.' Kearney v. Snodgrass, 12 Or 311, 316, 7 P 309."

The rule which we just quoted is applied in criminal cases. In *State v. Avent,* 209 Or 181, 302 P2d 549, this court, speaking through Mr. Justice Lusk in affirming conviction in a homicide case, said:

"It should be borne in mind that it is only in rare cases that this court will notice an alleged erroneous ruling of the trial court to which no exception was taken or objection made by the appellant. From a very early date the rule has been that it is not error only, but error legally excepted to, which affords ground for reversal. The rule applies in criminal as well as civil cases. State v. Cory, 204 Or 235, 282 P2d 1054; State v. Nodine, 198 Or 679, 686, 259 P2d 1056. It is sometimes less strictly enforced in criminal, and especially in capital, cases, but even then it will not be relaxed unless the court, upon an examination of the entire record, can say that the error is manifest and that the ends of justice will not otherwise be satisfied."

It will be noticed that in the "rare cases" in which an appellate court will consider a matter which was not called to the attention of the trial judge the purported error must be "manifest" and the appellant must make it appear in the appellate court that only a reversal of the challenged judgment will serve the ends of justice. In the case at bar every objection made by the defendant to questions pertaining to his criminal record was sustained; none was overruled. I do not believe that it is manifest that the defendant was prejudiced by the mere fact that the district attorney asked the questions set forth in the majority's opinion. The district attorney should have been more circumspect in phrasing two of his questions; but to say that it is "manifest" that the defendant was prejudiced

by their mere voicing is unwarranted in my belief. Had it been manifest at the time when the questions were asked that prejudice thereby resulted to the defendant, the latter would surely have moved for a mistrial. And since the trial judge, in his commendable efforts to protect the defendant's rights, did not wait for objections before ruling, it is plainly evident that he had not discerned any prejudice to the defendant.

The rule of which we have just taken notice is peculiarly applicable to contentions based upon the conduct or argument of counsel. The trial judge is familiar with the atmosphere of the trial and is in a far better position than the members of this court to determine whether an improper remark had prejudicial effect. If the purported victim of the improper remark or conduct can remain silent when the incident occurs but upon appeal ask for a reversal, his speculation upon the result will prolong litigation for it may be that if he had spoken when the incident occurred a proper remedy could have been applied right then. In *Shaw v. Pacific Supply Coop.*, 166 Or 508, 113 P2d 627, counsel violated proprieties but the victim, who became appellant, had saved no exceptions. I now quote from the decision:

"Complaint is made of rulings of the circuit court on objections by the defendants to portions of the closing arguments of counsel for the plaintiff. The court sustained two of the objections, and directed the jury to disregard the offending statements. Two other objections were overruled, but no exceptions were taken to the rulings. The record, therefore, presents no reviewable question. We do not wish to be understood as approving the type of argument which the trial court thought unobjectionable. It was not proper * * *."

I am satisfied that the defendant has failed to show that his conviction was unjust and that the ends of justice can not be met unless his conviction is nullified. The trial was somewhat more thorough than that generally conducted in cases of this kind. The transcript of the trial covers 343 pages. Both before and after the trial the defendant availed himself of auxiliary judicial proceedings so as to be sure that he secured for himself all of his rights. Nothing was overlooked. I know of no justification for a belief that we should now seize upon something that no one deemed prejudicial when it occurred and reverse the challenged judgment therefor.

Deviations from the established rules governing trials are bound to happen. All who conduct the trial are human beings. No trial is ever conducted with perfect adherence to the rules. It would be nothing less than a miracle if, after a trial has been completed and a transcript of the evidence (in this case 345 pages) has been placed in the hands of an astute attorney, some slip-up can not be detected. We must bear in mind that no one is entitled to a perfect trial; the law goes no further than to assure a trial free from prejudicial error. A circuit court judge is always present and his primary objective is to see to it that the accused's rights are not prejudiced. There presided over the defendant's trial a very able judge—the late Martin Hawkins. The alertness which he displayed and his constant efforts to assure the defendant of all of his rights should be accepted by this court as a guaranty that the defendant had a fair trial.

I dissent. The challenged judgment should be affirmed.

McAllister, C. J., and Perry, J., concur in this dissent.