Argued September 30, affirmed November 6, 1963

# STATE OF OREGON *v.* HERRERA
### 386 P. 2d 448

[ 1 ]

*Joseph W. Hagler,* Klamath Falls, argued the cause and filed briefs for appellant.

*Dale T. Crabtree,* District Attorney, Klamath Falls, argued the cause for respondent. With him on the

brief were Sam A. McKeen and John R. Thomas, Deputy District Attorneys, Klamath Falls.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

GOODWIN, J.

The defendant was indicted for first-degree murder. The jury found him guilty of second-degree murder. He appeals.

The defendant was accused of killing Frankie Long, a twenty-three-month-old boy, by kicking him to death. Frankie Long was the child of Franklin Long and Lorene Long. The defendant had been acquainted with Lorene Long before her marriage to Mr. Long. The defendant's relationship with Lorene was interrupted when the defendant pleaded guilty to the crime of contributing to the delinquency of a minor and was sent to the state penitentiary. Lorene, as the minor in that case, was committed to the Hillcrest School for girls. Upon her release from Hillcrest, Lorene married Mr. Long. Frankie was born of that union. Lorene then divorced Mr. Long. The defendant was released from prison and, after her divorce, resumed his association with Lorene.

The state contended that the defendant resented the Long child and studied its destruction. There was evidence that the defendant had attacked and beaten the child on other occasions. The mother testified, for example, that the defendant hit Frankie in the face with his fists and broke the child's jaws a few weeks before the murder. This evidence was corroborated in part by other witnesses.

At the time of the crime, the defendant was living with Lorene, Frankie, and two of his own children, a six-year-old boy and a two-and-a-half-year-old girl. The evidence tended to prove the following: During the afternoon when the murder was committed, the two children of the defendant were in a bedroom with Frankie. The three were supposed to be taking naps. Frankie began to cry. The defendant told Lorene he would go in and take care of Frankie. The defendant went into the bedroom. He emerged a short time later and repaired to a tavern. Some minutes later, Lorene went into the room to look after the children and found that Frankie was dead. The body was badly bruised. (Later examination revealed extensive internal bleeding, broken ribs, brain damage, and a ruptured liver.) Lorene ran to a neighbor's house for help. The two other children were taken to the neighbor's house, where they watched television. Meanwhile officers were summoned.

There are nine assignments of error. One challenges the conviction upon the ground of misconduct by the prosecuting attorney.

The alleged misconduct of the prosecutor consisted in declaring in his opening statement that the deceased child had been conceived while the defendant was serving time in the state penitentiary. The trial court promptly told the jury to disregard that statement by the district attorney. The matter was not mentioned again in the opening statement. In defense of conduct that appears to have been dangerously close to pettifogging, the state now asserts that it was entitled, upon trial, to prove that the child the defendant was accused of kicking to death had been conceived by his female friend while the defendant was in prison, and, therefore, the jury should be permitted to infer that

the defendant had a malicious predisposition to kill the child.

■ Fragments of such evidence later did come in, and did have some relevence on the score of malice and premeditation. We cannot say, as a matter of law, that the fact of defendant's prior imprisonment could never properly be brought to the attention of the jury in an opening statement. If such evidence actually has probative value concerning a material issue in the case, there is no reason why reference may not be made to it in the opening statement. *Cf. State v. Martin,* 47 Or 282, 83 P 849 (1906). See, where the evidence alluded to in opening statement was later excluded, *State v. Broadhurst,* 184 Or 178, 196 P2d 407 (1948). However, the inflammatory nature of the prosecutor's remarks in the case at bar outweighed any reasonable excuse for including them in the opening statement. It is, of course, error to permit the state to attack the defendant's character at any stage of the trial, except where the defendant has offered himself as a witness on his own behalf. *State v. Ede,* 167 Or 640, 644, 117 P2d 235 (1941). See also ORS 45.600. The accused is required to answer a charge of a specific crime, not a charge that he is a bad man. *State v. Ogden,* 39 Or 195, 65 P 449 (1901).

■ We do not believe, however, that the misconduct of the prosecutor resulted in actual prejudice to the defendant. It is presumed that the jury disregarded the improper remarks of counsel. If any damage to the defendant remained in the mind of any juror, it was neutralized later in the trial. The evidence of the former conviction was placed before the jury when the defendant took the stand as a witness. The state then introduced evidence of the former conviction to impeach his credibility. See *State v. Rollo,*

221 Or 428, 437, 351 P2d 422 (1960). The assignment of error based upon the conduct of the prosecutor reveals no basis for reversal.

The next assignment of error which we will consider presents a different sort of problem. During the prosecution's case, the state induced the trial court to admit evidence which the defendant characterizes as hearsay.

Some time while the Herrera children were at the neighbor's house watching television, a woman there asked the six-year-old boy what had happened. At the trial the neighbor was permitted to testify over the objection of counsel that the six-year-old had told her, "Daddy jumped on Frankie." The state apparently offered the testimony to prove the truth of the charge. (The state argued that the evidence was admissible as a "spontaneous utterance.")

██ While the trial court has some discretion in permitting a witness to report what was said by another during or immediately after an event if the reported declaration was spontaneous or impulsive, this exception to the hearsay rule was misapplied in the case at bar. Compare *State v. Hutchison*, 222 Or 533, 543, 353 P2d 1047, 83 ALR2d 1361 (1960), where the child, a victim of sexual molestation, within three or four minutes after the crime, and while still under the influence of a traumatic experience, told his mother what had happened.

█ It does not follow, however, that there was error requiring a reversal of the judgment. In addition to circumstantial evidence against the defendant, the state had already put in evidence the eyewitness testimony of the defendant's six-year-old son. The child's testimony had been subjected to intensive cross-examination. The defendant was not, therefore, prejudiced by

any lack of opportunity to cross-examine the person who had made the out-of-court declaration. The testimony of the neighbor woman, although hearsay, was not infected with the usual prejudicial quality of hearsay, i.e., that it is not subject to cross-examination.

■ A more serious objection to the challenged testimony is one that was not raised during trial, and, accordingly, not presented here as error. Before the boy's testimony had been impeached in any manner, it was improper for the state to seek to help the boy's oath by bringing in the neighbor's testimony that the boy had told the same story before. For this purpose, the challenged testimony was both irrelevant and self-serving. *Maeder Steel Products Co. v. Zanello,* 109 Or 562, 577, 220 P 155 (1924); 4 Wigmore, Evidence 194-196, § 1124 (3d ed 1940). The testimony was, accordingly, inadmissible for any purpose at the time it was offered.

The error in receiving the challenged testimony, however, in substance turned out to be an irregularity in the order of proof. Later in the trial, the defendant did attack the child's credibility as a witness by insinuating that the child had been coached by a deputy district attorney. Reasonable latitude in rebuttal would have allowed the state then to use the neighbor's testimony to meet the defendant's attempts to show that the child as a witness was telling a recently contrived story. (The fact that the child had told the same story before would thus tend to prove, not the truth of the story, but only that the story was not the product of coaching.) *Cf. Maeder Steel Products Co. v. Zanello,* supra at 578; 4 Wigmore, Evidence 205, 216, §§ 1129, 1132 (3d ed 1940).

 If the challenged testimony had been offered at the proper time, and for a permitted purpose,

there would have been no error in receiving it. Viewing the record as a whole, the net defect in the procedure that was followed was the failure of the court to advise the jury of the limited purpose for which the challenged testimony should be considered. See, on cautionary instructions in this context, 1 Wigmore, Evidence 300, § 13 (3d ed 1940). In view of other instructions which were given, however, the jury understood that it was to view the child's testimony with caution. We are satisfied that the defendant was not prejudiced by the failure of the trial court to explain the limited purpose for which the jury might consider the neighbor's testimony at the time it came in. Whatever error may have been committed, it was not excepted to, and is not of the sort that would require us to notice it under Rule 46.

While such cases are not common, there are times when it is necessary to invoke the provisions of Oregon Constitution, Art. VII (Amended), § 3, and affirm a judgment "notwithstanding any error committed during the trial." See *State of Oregon v. Cahill,* 208 Or 538, 293 P2d 169, 298 P2d 214, cert. den. 352 US 895, 77 S Ct 132, 1 L Ed2d 87 (1956). In the case at bar, the irregularity in receiving testimony was precisely the sort of error referred to in the constitutional provision and in ORS 138.230, which requires this court upon appeal to give judgment "without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

▓ There was abundant evidence to support the jury's verdict. Even without the direct testimony of the six-year-old child, there was evidence that the defendant was the only adult who could have committed

the crime. There was sufficient competent evidence to sustain the conviction. The challenged evidence can, and should be, disregarded as surplusage. While this court will, without hesitation, reverse a conviction when inadmissible testimony injects prejudice into the case, there was no prejudice in this case.

 Another assignment of error attacks the propriety of permitting the six-year-old child to testify at all. Whether or not to permit the child to testify was a matter within the discretion of the trial court. The record reveals that the trial court, out of the presence of the jury, made a painstaking examination of the child, and subjected the child to searching cross-examination by the defendant's attorneys before permitting him to testify. There was no abuse of discretion in permitting the child to tell the jury what he saw. See ORS 44.030 (2); *State v. Jensen,* 70 Or 156, 140 P 140 (1914). *Cf. State of Oregon v. Doud,* 190 Or 218, 225 P2d 400 (1950).

 Another assignment of error challenges the rulings of the trial court on motions for acquittal. It is clear that there was no merit in any of the several motions for a judgment of acquittal. There was enough evidence to support the verdict.

 There was likewise no merit in an assignment which challenges the instructions given concerning lesser, included crimes. The court, pursuant to ORS 17.255 (2), sent written instructions to the jury. The written instructions informed the jury that the state must prove the cause of death, but did not, with special reference to the included crimes of second-degree murder and manslaughter, repeat the instruction that the state must prove that the death of the victim was caused by the defendant "striking the said Frankie Long with his feet." (This is the form in which the

allegation appeared in the indictment for first-degree murder and in the instructions.) The defense attorneys requested the trial court to instruct the jury again upon cause of death with reference to the included crimes. The court then told the jury that it was just as necessary for the state to prove, in connection with the lesser offenses, that death was caused by striking with the feet as it was in connection with the charge of first-degree murder. The defendant now contends that the verbal additions to the written instructions should have been incorporated in the written instructions and that the failure of the court to so incorporate them somehow renders the instructions bad.

The contention cannot be sustained. The written instructions sufficiently advised the jury of the facts the state needed to prove in connection with the included crimes, and there was no need to amplify them. Further, the verbal instructions were requested by the defendant. When the trial court acceded to the defendant's request for additional instructions, it gave him more than he was entitled to. It hardly seems necessary to point out that no right of the defendant was prejudiced by the failure of the trial court to put the surplus instructions in writing.

We have noticed a number of other irregularities in the trial record, which were not objected to at the trial, and which have not been assigned as error. We do not consider any of them, alone or in combination, to be of sufficient gravity to warrant reversal.

There being no error which affected a subtsantial right of the defendant, the judgment is affirmed.