Argued July 23, affirmed August 6, 1973

STATE OF OREGON, *Respondent, v.*
DONALD KNOKE (No. 72-87-C),
*Appellant.*
512 P2d 1353

188

*Del Parks,* Klamath Falls, argued the cause and filed the brief for appellant.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John H. Clough, Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from conviction of criminally negligent homicide, ORS 163.145, a lesser included offense of manslaughter, ORS 163.125, which was charged in the indictment.

The homicide occurred at a parking lot in Klamath Falls shortly before midnight on June 15, 1972. The deceased and two young ladies were sitting in a parked automobile, the ladies in the front seat and deceased in the rear seat, and a witness was crouched at a front window talking with the car's occupants

when the defendant drove up in another vehicle, got out of it and approachd the vehicle in which deceased was sitting. Deceased had in his possession a loaded handgun which he had been displaying. Defendant was a friend of the deceased and, as he approached, the deceased apparently pointed the gun at defendant, which caused some interchange of remarks. As defendant conversed with the occupants of the car the gun was further displayed by deceased, which resulted in defendant's asking for it and deceased's handing it to him. Immediately following this, the gun was discharged, striking deceased in the chest, resulting in his almost immediate death. Defendant, deceased and the two women had all had some beer to drink during the evening but evidence of extent of intoxication was meager.

Defendant alleges error on trial (1) in allowing the prosecution to present evidence of a prior written statement of a prosecution witness during redirect examination after the witness had been impeached during cross-examination by other of her pretrial statements, and (2) in allowing the prosecution to argue concerning whether the gun was shot from inside or outside the car in which deceased was sitting, in view of a stipulation which had been made by counsel. In this respect the defense also argues that the court improperly instructed the jury as to what weight as evidence it should afford the stipulation.

The woman who was sitting on the passenger side of the front seat of the vehicle had testified concerning events leading up to the shooting. She testified that, while she did not see the gun as it went off, the explosion occurred two or three inches from her head. She also testified extensively about the amount

of time involved and things that were said before the shot was fired. In cross-examination she was interrogated concerning three statements which she made, two on June 16 and one on June 20, the details of which were sharply inconsistent with her present testimony. On redirect examination the prosecution produced a statement, which was consistent with her trial testimony, made on September 26 to the district attorney. The court allowed this evidence to be received over the defendant's objections. She testified the latter statement had been made when she voluntarily went to the district attorney for the purpose of making it. It had been developed in the cross-examination of the witness that she was emotionally upset, to the extent of having contemplated taking her own life, during the days following the homicide. The witness testified, in summary, that she could not think of the details of what had happened during that time, but that she had been better able to recollect afterward.

Defendant relies upon cases such as *The People v. DePoy*, 40 Ill 2d 433, 240 NE2d 616 (1968), which holds that, when a witness is impeached in cross-examination with contradictory statements made before trial, admission in redirect examination of evidence of other statements consistent with his testimony is not competent. Apparently a variety of views can be found in various jurisdictions on this subject. In IV Wigmore, Evidence 258, § 1126 (Chadbourn rev 1972), the subject is discussed as follows:

"The field in which the judicial divergence of views is most vigorous and the opposing reasons most plausible is that of impeachment by prior inconsistent statements [citing authority].

"On behalf of the admission of the supporting evidence [after the impeaching evidence has been

produced], the earlier and conventional argument is that if a contradictory statement counts against the witness, a consistent one should count for him —a bit of loose logic which is natural and plausible * * *. The answer to this argument is simply that, since the self-contradiction is conceded, it remains as a damaging fact, and is in no sense explained away by the consistent statement * * *.

"But this answer, forceful as it seems at first sight, is itself in one respect based on a fallacy. * * * [M]ay not the consistency of his other statements help with the jury to controvert the testimony that he did utter the contradiction? The jury have still to determine * * * and if his consistency at other times can assist them in reaching a conclusion upon this fundamental point, it is relevant * * *." IV Wigmore, supra, at 258-60.

Wigmore then quotes Mr. Justice Cooley in *Stewart v. The People,* 23 Mich 63, 76, 9 Am R 78 (1871):

" '* * * It is impossible to lay down any arbitrary rule which could be properly applied to every case * * * but we think that there are some cases in which the peculiar circumstances would render this species of evidence important and forcible. * * * We think the circuit judge ought to be allowed a reasonable discretion in such cases, and that though such evidence should not generally be received, yet that his discretion in receiving it ought not to be set aside except in a clear case of abuse.' " IV Wigmore, supra, at 260-61.

■ The explanations given by the witness as to her reasons for the contradiction between the various statements she had made appear to be "peculiar circumstances" of the nature Mr. Justice Cooley was referring to. We think that in view of such circumstances all of the statements including that to which the defendant objects were relevant and properly laid before the jury for it to determine as well as it could

what part, if any, of the witness' testimony was entitled to credibility. *Cf. State v. Herrera,* 236 Or 1, 8-9, 386 P2d 448 (1963).[①]

■ The context in which the stipulation was made is important in understanding defendant's second claim of error. Dr. Nicholson was called to testify as to the cause of death. During his direct examination he stated that the deceased wore a jacket which was the first recipient of the bullet and that on the jacket there was no evidence of burning and, therefore, the jacket was outside the "cone of fire" which erupted from the gun when it was discharged. He noted that the pistol used in the instant case was a high velocity caliber .22 magnum and that it would have a longer cone of fire than from a low velocity firearm. He stated that without performing a test he could not tell the minimum distance that the pistol must have been away from the victim when it was fired. Counsel requested and the court authorized such a test. A recess was then taken. After recess the following occurred:

> "MR. HARNISH [prosecutor]: During the recess, it's my understanding that the Defendant and the State have reached an agreement to avoid conducting a test in this matter and it's our agreement that the gun was fired outside of the car at a distance of not less than one foot from the car nor more than two feet from the car.

> "MR. PARKS [defense counsel]: That's our stipulation, Your Honor.

---

[①] The transcript discloses that out of the presence of the jury the court and counsel cautioned this witness about revealing to the jury in her testimony that something had been said in one of her statements about another "killing" in which defendant was involved. We have no way of knowing whether this had any bearing on the trial judge's decision to allow the challenged statement to be broached in redirect examination.

"THE COURT: Very well. The Jury may reguard [sic] that as evidence."

On the next day of trial witness Schonchin, who had been crouching beside the vehicle and had been talking with the women as the homicide transpired, was called as a prosecution witness. He testified that he saw deceased hand the gun to defendant, that he saw defendant point the gun at the deceased, that he heard the hammer as it came back and that he heard the shot. He repeatedly testified on direct and exhaustive cross-examination that defendant was holding the gun and his arm up "to the elbow" inside the car when the gun was discharged. At no time during this examination did defense counsel object to any such evidence being received because it was contrary to the stipulation which had been made.

When the prosecution in argument to the jury said,

"* * * Where the gun was shot from when it was discharged, whether it was in the car or outside of the car, the fact is that the gun struck somebody and that person is dead * * *,"

defense counsel objected on the basis of the stipulation. The objection was overruled. Among instructions requested by the defendant was one as follows:

"There has been a stipulation between counsel in this case as to a specific set of facts and in this regard I instruct you that you must regard the stipulation as being true and a fact proven in this case."

The court changed this instruction and gave it as follows:

"There has been a stipulation between the parties in this case as to certain facts relating to the so called cone of fire and in this regard I instruct

you that you must regard the stipulation as being true and a fact proven in this case."

Defendant took exception to the change made by the court in the instruction.

The prosecutor probably misstated what he intended to say when the stipulation was placed in the record. The context in which it was made indicates this is so. However, what he did say was clear and the prosecution probably would have been bound by its stipulation had not the conduct of the prosecution and the defense with reference to the witness Schonchin produced other direct evidence concerning the same fact, which also related to Schonchin's credibility.

When the prosecution's questions to Schonchin produced evidence that the gun was shot from inside the car, the defense made no objection, and then vigorously cross-examined on the same subject, it cannot turn about thereafter and claim that the prosecution is limited to the stipulation. To so hold would amount to a deprivation of evidence which was received in good faith and was relevant to a determination of credibility and facts. This being so, the construction placed on the stipulation by the court's instruction to the jury was logical.

Affirmed.