Argued at Pendleton May 6, reversed and remanded June 17, 1924.

## STATE v. CLIFFORD BRENNAN.

(227 Pac. 275.)

**Witnesses—Record of Prior Conviction of Defendant, Testifying, Admissible as Primary Evidence, Though not Questioned Concerning Same.**

1. Under Section 863, Or. L., record of prior conviction of defendant is admissible as primary evidence of that fact for purpose of impeaching him as witness, though defendant not previously questioned concerning same.

---

1. Method of proving conviction of crime in order to impeach defendant in criminal case as witness, see notes in 13 Ann. Cas. 643; Ann. Cas. 1914C, 256.

Witnesses—Defendant may be Impeached by Showing Prior Conviction.

2. Defendant as witness may be impeached by showing prior conviction.

Criminal Law—Efforts in Argument to Discredit Witness Based on Matters not in Evidence Held Reversible Error.

3. Persistent effort of counsel in prosecution for rape, in spite of court to get before jury in argument fact, not in evidence, that sister of prosecutrix, defendant's wife and witness for him, had before marriage been indicted with him in prosecution for lewd cohabitation, *held* reversible error.

Criminal Law—Objection to Question Need not be Repeated, When Question Repeated After Objection Overruled.

4. After objection to question has been overruled and exception taken, it need not be repeated on repetition of the question in order to still preserve it.

Rape—Evidence of Defendant's Drinking Held Improperly Admitted.

5. Testimony that defendant had been drinking "moonshine" at time prosecutrix was found by her brother in defendant's car and taken home *held* improperly admitted, in view of prior undisputed proof of defendant's drunkenness.

From Wallowa: J. W. KNOWLES, Judge.

In Banc.

The defendant, Clifford Brennan, on the eleventh day of September, 1923, was indicted by the grand jury of Wallowa County for the crime of rape, committed upon one Thelma Sprague, a female child under the age of sixteen years, and not the wife of the said Clifford Brennan. On the twentieth day of November, 1923, the defendant was put on trial and the jury returned a verdict of guilty as charged. Thereafter, the defendant's motion for a new trial having been overruled, he was sentenced to the penitentiary, and, being dissatisfied with the judgment, he appeals to this court.          REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. J. A. Burleigh* and *Mr. Sylvester H. Burleigh.*

For respondent there was a brief over the name of *Mr. Max Wilson,* District Attorney.

McBRIDE, C. J.—The evidence for the state tended to show that the injured girl was under the age of sixteen years; was exceedingly hard of hearing; and, while not so weak mentally as to be an actual defective, was considerably below the average standard of mentality. These facts rendered it very difficult for her to understand the questions put to her, and her answers very often were confused and misleading, but, when really made to understand the questions put to her, her testimony seemed very clear, and apparently very candid. The net result of her testimony was such as would tend to impress any unprejudiced person with the belief that her statements were true, although contradicted by the defendant, and, in some particulars, by the defendant's wife and other witnesses. There were some corroborating circumstances, so that there may be said to have been fairly reasonable grounds for the verdict which was rendered.

Many errors were alleged, and particular objection was made to the introduction of a judgment-roll showing a prior conviction of the defendant of the crime of lewd cohabitation. Before the introduction of the record the clerk of the court was called and was asked if he had in his possession the judgment-roll in the case of the State of Oregon against C. A. Brennan and Gladys Sprague. Counsel for the state then offered the judgment-roll in evidence. Defendant's counsel objected to it as incompetent, irrelevant, and immaterial, which objection was sustained as to the whole judgment-roll. Mr. Fairchild, who was

111 Or.—31

retained to assist the district attorney in the prosecution, and who seems to have taken the leading part in this matter, then said, "I will offer the judgment." Counsel for defendant said:

"We admit that this is a judgment roll, but we object to it as incompetent, irrelevant, and immaterial, and not rebuttal, and we ask to argue this matter not in the presence of the jury. It is not an impeachment; he has not asked the defendant anything about it."

The court excused the jury and after the argument the jury was recalled. Mr. Fairchild then said, "I will offer the indictment and the judgment"; to which offer counsel for defendant objected as to each and both of them. The objection was sustained as to the indictment.

Mr. Fairchild then asked the following question of the clerk:

"You have in your custody as such clerk the judgment record in the case of state of Oregon against C. A. Brennan and Gladys Sprague?"
Answer: "Yes."

Mr. Fairchild then said, "I will offer in evidence the judgment."

This offer was objected to by counsel for defendant as incompetent, not rebuttal, and not impeachment, but the judgment was admitted. This judgment was copied into the bill of exceptions, and is entitled, "The State of Oregon, Plaintiff, v. C. A. Brennan, Defendant"; the name of the other defendant being left out, and showing Brennan's conviction and a sentence to pay a fine and the costs. Counsel for defendant then made the following statement:

"If the court please, we move to strike out the statement of counsel in reference to this judgment

as to any other person named in the judgment, except
that of the defendant.''

The motion was denied by the court and an excep-
tion allowed the defendant.

These proceedings, and the conduct of special coun-
sel for the prosecution, indicated a disposition on the
part of the special counsel to get before the jury the
fact that Gladys Sprague, who afterwards became
the wife of the defendant, and who was his principal
witness, was the party with whom he had been guilty
of lewd cohabitation before his marriage with her.
The further conduct of counsel in that respect is in-
dicated by the following excerpt from the bill of ex-
ceptions, as certified by the judge:

''The taking of the testimony having been com-
pleted, the case was argued by counsel, and in the
close of the argument, Mr. Fairchild, special counsel
employed to assist in the prosecution, and who had
the main charge of the prosecution, and who made
the closing argument for the state, stated to the
jury that the wife of the defendant was unworthy of
belief; that she had been jointly indicted for the
crime of lewd and lascivious cohabitation, and that
the defendant had pleaded guilty thereto, to which
statement the counsel for defendant objected, and
moved the court to direct the jury to disregard the
same, whereupon the court said, in the presence of
the jury: 'There is no evidence before the court that
Mrs. Brennan had ever been indicted, and the jury
is to disregard that statement.' Later, in the close
of his argument, Mr. Fairchild again referred to that
matter, and stated that the defendant's wife was
unworthy of belief and said: 'Just look at her face
and the face of her unmarried sister, Gussie Sprague,
then imagine which between them is telling the truth;
just consider the Sprague family, and I ask you,
gentlemen of the jury, how many more girls of the
Sprague family are you going to let this defendant

seduce and debauch?' Then several other times at
the close of his argument the said A. Fairchild re-
ferred to that fact. There was no official report of
the address of the said A. Fairchild, as counsel for
the state, and no official record was made of his argu-
ment.

"The court admonished Mr. Fairchild to keep
within the record, but counsel paid no attention to
the admonitions of the court, and throughout his
entire address, both directly and by implication and
innuendo, attacked the character of the said Gladys
Brennan, wife of the defendant, in connection with
the indictment and judgment roll which had been
offered in evidence, which judgment was admitted in
evidence. Defendant assigns this as error upon the
part of the court in permitting counsel for the state
repeatedly to refer to that matter in his closing argu-
ment."

1. Counsel for defendant urges here very earnestly
that it was not proper to introduce the judgment in
evidence until the witness had been given a chance
to answer a question as to whether he had com-
mitted the offense. In this counsel is in error. Our
statute, Section 863, Or. L., is as follows:

"§ 863. Witness, How Impeached. A witness may
be impeached by the party against whom he was
called, by contradictory evidence, or by evidence that
his general reputation for truth is bad; or that his
moral character is such as to render him unworthy of
belief, but not by evidence of particular wrongful
acts; except that it may be shown by the examination
of the witness or the record of the judgment that he
has been convicted of a crime."

It is not uncommon to attempt to prove a prior con-
viction by questioning the witness on the stand, but
this is not a necessary prerequisite under the statute,
nor has counsel cited any authority to that effect.
The record of a conviction is primary evidence of

the fact, and is so held by all of the authorities: 2 Wigmore on Evidence (2 ed.), § 980; *State* v. *Isley,* 62 Or. 241 (124 Pac. 636).

2. It is further urged that the defendant, being a witness, cannot be impeached by showing that he has committed another crime, but *State* v. *Isley, supra,* is conclusively to the contrary. *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820), cited by defendant's counsel on this question, is inapplicable, for the reason that the defendant in that case was not a witness in his own behalf. The rule seems to be that, where a defendant goes upon the stand and assumes the privileges of a witness, he is subject to the same methods of impeachment as any other witness.

3. We think, however, that the persistent attempt of counsel to get before the jury, in the argument, the fact that Gladys Brennan, formerly Gladys Sprague, had been the other party to the offense of which defendant had previously been convicted, and his continuous attempt, over the ruling of the court, as shown by the court's own statement, to refer to her in that connection, constitute such error as we cannot overlook. In civil cases, particularly, we have often had occasion to reprove counsel for attempting to get before a jury in argument facts not proven upon the trial, and evidence which had been excluded upon the trial; but we find that it has had little effect, and, in cases of conduct as flagrant as the attempt of counsel in this case, we have no remedy but to set aside a verdict obtained by such conduct.

4. Another objection was urged to the introduction of the testimony of Glenn Sprague, a brother of the prosecutrix. He was at the house where the defendant was staying shortly after the alleged offense had been committed, and finding her alone in defendant's

car, and being, no doubt, suspicious of the company she had been in, he took her home. In detailing the circumstances, he was asked the following questions:

"Q. And what are the facts about the defendant drinking at that time? A. Well, he was.

"Q. What was he drinking?

"[Objected to by counsel for defendant as immaterial and irrelevant and objection sustained by the court.]

"Q. Buttermilk or sweet milk?

"[Objection overruled by the court and an exception allowed the defendant.]

"Q. Go ahead now, Glenn, and tell us what he was drinking there at the Michellod house?

"[The record shows no objection.]

"A. Moonshine."

5. It is urged that because no objection was made to this question when it was asked the second time the defendant is not entitled to avail himself of the objection made previously, but this is not the case. A specific objection had been made to this same question just a moment before, which objection had been sustained by the court, and this was sufficient to indicate to the court the position of counsel on this question. Counsel for defendant was not required to continue making his objection every time the offending question was repeated. The admission of this testimony at that time was error. Earlier in the cross-examination of the prosecutrix she had stated that she did not want to stay in the house where the defendant and his wife had stopped preparatory to going out to their own home, and when asked why she objected she answered, in substance, that it was because they were drunk. If this testimony had been attacked in any manner, or contradicted by the parties, it is probable that the testimony we first alluded

to would have been admissible in rebuttal, but no such attack was made, and, as the case stands, the admission of the testimony of Glenn Sprague was error.

Several other errors are alleged, but, on the whole, we think the case was fairly tried; that the instructions were remarkably favorable to the defendant, and that he had no substantial ground for objection beyond the ones mentioned. The contention of counsel for the state that the court repeatedly interrupted the assistant prosecutor and directed him to desist from allusions to the connection of Mrs. Brennan, formerly Gladys Sprague, with the crime for which Brennan had been previously convicted, does not appeal to us. Notwithstanding these admonitions, counsel continued to offend. How much effect this may have had upon the jury we cannot determine. It was perfectly legitimate for counsel to comment upon Mrs. Brennan's testimony and its contradictions, if there were any, or discrepancies, if such existed, as affecting her veracity; but he went further than this, as the record indicates, and practically defied the court, and, in the absence of any decided caution in the instructions to the jury to disregard this lawless tirade, we feel that this alone would call for a reversal.

The judgment is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.

BROWN, J., concurs in the result.