Argued June 30; affirmed July 25, 1933

# STATE *v.* GOODLOE

(24 P. (2d) 28)

*Leroy L. Lomax, Jr.,* of Portland, for appellant.

*Joe Price,* of Portland, Deputy District Attorney (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

CAMPBELL, J. This is an appeal from a conviction for the crime of assault and robbery while armed with a dangerous weapon, under section 14-228, Oregon Code 1930.

Appellant and four others were jointly charged in two indictments, the one in the instant case and the other for murder in the first degree. The other defendants were disposed of by pleas of guilty on either one or other of the indictments to lesser crimes contained within said indictments. Appellant plead not guilty and stood trial on the indictment herein.

It appears that appellant, an ex-convict, came to Portland about one month before the crime was committed and located on Cherry street near Williams avenue. At this place he engaged in the unlawful sale of intoxicating liquor. He employed, as a helper, a man by the name of Albert Stetson, also an ex-convict. His place soon became the resort of ex-convicts and persons of shady reputations and criminal inclinations.

On the night of September 5, 1932, the four co-defendants came to appellant's place and indulged

somewhat freely in intoxicating liquor. At about 11:30 p. m., the four co-defendants left the place and went to the Sandy Court apartments at East Sixth and Taylor streets with the purpose of holding up Merle Barr, who was engaged in the unlawful sale of intoxicating liquor at apartment 413 at said apartment house. Upon their arrival, two of the defendants remained in the car and the other two, armed with revolvers, went up to the apartment of Merle Barr where they found E. B. Barber, Charles Camillo, Herbert Roe, Thelma Torrey and the proprietor, Merle Barr. When they got in the room, they drew their guns and ordered everybody to "put up their hands". They then proceeded to rob those who were there. From E. H. Barber, the first man robbed, an elderly man, they obtained a small sum of money. From Merle Barr they obtained about $11. Some dispute arose as to whether Merle Barr gave up all the money he had, and, upon protesting that he had no more, one of the defendants shot and killed him. The record does not disclose how much money they got from the other occupants of the room. The whole affair occurred within a few minutes and was a continuous performance without intermission. The two defendants who did the actual "hold-up" then came away from the apartment, got into the car with the other two defendants who were waiting and went to the home of Tony Camillo where they hid the revolvers in the attic and then returned to the house of appellant. The appellant was not in the presence of his co-defendants at any time after they got into the car to leave his place at Cherry street, until they returned there about 12 o'clock midnight. This far, the facts are practically undisputed.

The testimony of one of appellant's co-defendants aided materially in his conviction. If defendant were

guilty, his co-defendants would of course be his accomplices. One of the accomplices became a witness for the state. In his testimony, he gave an account of the whole transaction from the time they met at appellant's place until they finally separated at the same place.

■■ ■ The state called E. H. Barber, the man whom the indictment alleged to have been robbed and the complaining witness, who testified over objection of appellant to certain statements made by one of the co-defendants while engaged in completing the robbery of the parties in the room after he had finished robbing the witness. The whole affair being a single transaction, the declarations or statements of any one of the defendants, who was a party to it, would be admissible against all. A conspiracy is an agreement or combination by two or more persons to do an unlawful act, or to do a lawful act by unlawful or criminal means. *People v. Richards,* 1 Mich. 216 (51 Am. Dec. 75). There is evidence, and there are circumstances, tending to show that appellant loaned his co-defendants a revolver with which to stage the robbery; that he procured for them the use of the car employed by them; that after the co-defendants returned to his place, the fruits of the robbery were divided with appellant. If this evidence be true, and the jury must have believed it, then the conspiracy did not terminate at the room in the Sandy Court apartments, but continued until the loot was divided, so that any statements by a conspirator during this time would be admissible against all. Oregon Code 1930, § 9-226, Sub-Sec. 6; *State v. Boloff,* 138 Or. 568 (4 P. (2d) 326, 7 P. (2d) 775); *State v. Milo,* 126 Or. 238 (269 P. 225); *State v. Lewis,* 51 Or. 467 (94 P. 831).

■ ■ This assignment of error is based on the court permitting witnesses to testify of the shooting of

Merle Barr. This shooting occurred almost immediately after the robbery of Barber, and the whole affair was one transaction.

There can be no question but that the general rule is that the commission of a separate crime can not be proven in support of the one in the indictment. *State v. Willson,* 113 Or. 450 (230 P. 810, 233 P. 259, 39 A. L. R. 84) ; *State v. Walters,* 105 Or. 662 (209 P. 349) ; *State v. Sullivan,* 139 Or. 640 (11 P. (2d) 1054. But there are exceptions to this rule.

''This exception is of value in a homicide where the accused has taken the life of two or more persons at or about the same time or place. So (the fact) that the accused had killed three persons at one time and place in an attempt to commit a burglary may, of necessity, be proved on his trial for the murder of any one of them.'' Underhill's Criminal Evidence, [3d Ed.] § 154, p. 205; 1 Wharton's Criminal Evidence, [10th Ed.] § 262; People v. Teixeira, 123 Cal. 297 (55 P. 988).

■ At the close of the state's case in chief, appellant moved the court to instruct the jury to return a verdict of not guilty. The motion was overruled and this assignment of error is based thereon.

■ The motion was predicated on the theory that there was no evidence tending to connect the appellant with the crime charged except the testimony of accomplices. It would serve no useful purpose to quote the testimony at length. Suffice it to say that the evidence of McKnight and Buechner in regard to appellant procuring the automobile for his co-defendants which was used by them in transporting them to and from the scene of the robbery; the evidence of Stetson regarding the gun that he claimed was given to the co-defendants by appellant; the return of the co-defendants to appellant's house and that there was talk about the divi-

sion of the fruits of the robbery in the apartments of, and in the presence of appellant, were such evidential facts and circumstances as would tend to connect the appellant with the criminal acts of his co-defendants. Then there was the actions of the appellant himself at the time of the arrest; his escape and flight and his statements to the officers while being returned from Chicago. All this evidence was independent of that given by his accomplices.

■ When the officers first went to appellant's house to make the arrest, appellant hid under the bed. Upon being discovered, he came out and while the officers were continuing their search of the premises he quietly made his escape and succeeded in reaching Chicago where he was later arrested and brought back for trial. In his direct examination he tried to excuse his actions of hiding and escaping by testifying that he was on parole from a conviction and sentence to the state penitentiary of the state of Washington with an eight-year term still hanging over him; that he knew he had forfeited his parole by violating the law regarding intoxicating liquors and consequently felt that he would be sent back to complete his term. After this testimony was received without objection, the district attorney introduced, over objection of appellant, a judgment order of the Superior Court of the state of Washington which in fact corroborated this part of appellant's testimony. It was proper as cross-examination as well as for impeachment. To further impeach the witness the state introduced judgment records of two other former convictions, one in the state of Ohio and one in the state of Missouri.

"A witness may be impeached by the party against whom he was called * * * by evidence that * * * his moral character is such as to render him unworthy

of belief, but not by evidence of particular wrongful acts; except that it may be shown by the examination of the witness or the record of the judgment that he had been convicted of a crime.'' Oregon Code 1930, § 9-1911.

■■ When the accused in a criminal case takes the witness stand, he is subject to the same rules in regard to examination, cross-examination and impeachment, as any other witness. The state is not limited to showing only one conviction. *State v. Brennan,* 111 Or. 479 (227 P. 275); *State v. Newlin,* 84 Or. 323 (165 P. 225); *State v. Gilbert,* 138 Or. 291 (4 P. (2d) 923).

■ Sometime after sentence had been passed upon appellant and he had been confined in the state penitentiary, his co-defendant, Pasch, also an inmate of the state penitentiary, made a voluntary affidavit to the effect that the testimony he gave at the trial, incriminating the appellant, was untrue. Two other co-defendants, also inmates of the penitentiary, made voluntary affidavits which would tend to exonerate appellant from any implication in the crime. Appellant filed those affidavits in support of a motion for a new trial. The motion for a new trial was denied and this assignment of error is based upon the court's action in that regard.

■■ A motion for a new trial, on the ground of newly discovered evidence, is addressed to the sound legal discretion of the trial court and his action thereon will not be disturbed except for abuse of that discretion. There was no abuse of discretion in the court's refusing to grant a new trial on the showing made by the affidavits.

The judgment of the circuit court is affirmed.

RAND, C. J., BEAN, and BAILEY, JJ., concur.