Argued February 6, reversed and remanded May 20, 1964

# STATE OF OREGON *v.* TOWNSEND

392 P. 2d 459

Ray D. Robinett, Portland, argued the cause and filed briefs for the appellant.

Gerald R. Pullen, Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

PERRY, J.

The defendant was convicted of the crime of robbery while not armed with a dangerous weapon. From the judgment of conviction the defendant appeals.

The record clearly discloses that the defendant assaulted with his fists a Mr. Dunn on Couch Street in the city of Portland; that a billfold belonging to Dunn was taken from his person and was found in the room of the defendant.

The defendant contends there is no evidence to support the verdict in that the indictment charged the taking of "approximately $15 in money", and the evidence failed to prove that amount.

■ Dunn, the prosecuting witness, tesitfied in response to the question:

"Q How much money did you have in there [the wallet]?
"A I think I had $15 but I couldn't be sure."

He also testified the amount was just an estimate.

"* * * It was not essential for the state to

prove that any particular amount of money had been taken. All that it was necessary for the state to prove was that a robbery had occurred and that some amount of money of the character mentioned in the indictment had been taken. * * *" *State v. Lenhardt,* 152 Or 372, 374, 53 P2d 720.

The defendant also assigns as error the following instruction given by the trial court:

"All persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or aid and abet in its commission, are guilty as principals.

"Each confederate in the commission of a crime is liable for every act of his accomplice in execution of the common design, as each in law is the agent of the other. The guilty act of one committed in advancing the joint criminal object is a guilty act upon the part of all.

"To 'aid' means to help or assist in the doing of some act whereby a party is enabled to or by which it is made easier for him to do the principal act or effect some primary purpose.

"To 'abet' is to countenance, assist, or give aid, and the words 'aid' and 'abet' used together comprehend all assistance rendered by acts, words, or encouragement or support, or presence, actual or constructive."

The record discloses that one Patricia Carpenter had been jointly indicted with the defendant. Miss Carpenter was not, however, being tried jointly with the defendant. All of the evidence in this case is to the effect that the defendant himself committed all of the overt acts which are necessary to constitute the crime of which he was charged.

The above instruction would have relevance only if there was some evidence that this defendant had aided and abetted another in the perpetration of

the crime so that he could be charged and convicted as a principal.

> "* * * Courts should confine their charges to the facts of the case; but an abstract charge that states the law correctly cannot be the basis for a reversal of the judgment appealed from, unless it appears to the appellate court that it did mislead, or may have misled, the jury to the prejudice of the appellant." *State v. Selby,* 73 Or 378, 389, 144 P 657.

The defendant admitted the assault and the possession of the billfold. His defense was that he did not assault Dunn to rob him, but for being with his girl, and that he picked up the wallet while he was excited and under the influence of drugs and liquor.

■ While the instruction was improper, it is unnecessary for us to consider whether or not it was prejudicial since this case must be retried.

The defendant also contends that the trial court erred "by prohibiting comment by defense counsel on use and effect of drugs taken by the parties prior to the commission of the crime charged" in his argument to the jury.

The defendant was interrogated by a police officer at approximately 3:00 p.m. on the day following the assault. At this interview the defendant had admitted the assault, but stated he knew nothing concerning the billfold. The defendant's counsel, in reconciling the statement of the officer and the subsequent admission of possession by the defendant, argued that the defendant at the time he made the statement to the officer was under the influence of drugs taken the evening before. His argument and what occurred is reported as follows:

> "* * * Now you people know of these pills,

and pep pills, and everything else. Methedrine, as I understand it, is a drug. Some people use it for the same effect as sleeping pills, I understand. Doctors use it in the treatment of alcoholism. It is a depressant; it is not a stimulant. Methedrine—

"THE COURT: Counsel, there is no evidence about this at all here. I think your remarks are out of order.

"MR. ROBINETT: No evidence of what?

"THE COURT: No evidence as to the effect of drugs.

"MR. ROBINETT: There is evidence before the Court, your Honor, that both parties took Methedrine. There is evidence before the Court that—

"THE COURT: But you are testifying as to the effect of this drug.

"MR. ROBINETT: I am reiterating—

"THE COURT: I am merely instructing you not to testify, that's all.

"MR. ROBINETT: All right. Well, I don't want to offend the Court or the jury. I was not testifying, I was stating that—

"THE COURT: You are testifying. Nobody else has testified to it.

"MR. ROBINETT: It was substantially the testimony of Pat Carpenter that it was like taking a drink.

"THE COURT: If you won't take the Court's admonition, go ahead. I will talk to you later about it.

"MR. ROBINETT: Well, I will abide by—but in any event there is testimony that she was under the influence of this particular drug. It would seem reasonable, would it not, that the defendant, himself, would at the time of this questioning also be still under the influence of the same drug?"

There was evidence by Miss Carpenter that the taking of the drug caused her to get on a "cheap drunk" and that the drug makes "you sleepy."

■ It is evident from the defendant's brief that he did not understand the import of the court's comment. The trial court was calling attention to the fact that there was no testimony in the record as to the medical use of the drug. The trial court should have pointed out with more clarity wherein counsel was going outside the evidence in the case, but there can be no error when the trial court requires, as he should, that the argument be kept within the confines of the record. 53 Am Jur 385, Trial § 480.

■ The defendant also assigns as error the failure of the trial court to sustain his objection to the examination into the reasons why defendant's parole under a former conviction was revoked.

The defendant on direct examination testified that he had been convicted of the "charge of auto theft" in 1954 when he was 18 years old; that he was released from the penitentiary in 1962; that he served approximately eight years.

On cross-examination, after stating he had not been in prison custody the eight years, but had been granted a parole for a period of time and then his parole had been revoked, the following question was asked and an objection made:

"Q Do you care to explain the circumstances of your returning to prison?

"MR. ROBINETT: I will object to that question.

"THE COURT: You can ask him what he was picked up for, and if his parole was terminated, why it was terminated. If you wish to do so in a direct question, you can ask him."

Defendant was then asked:

>  "Q  What were you picked up for?"

and defendant gave the following answer:

>  "A  I was picked up for being out of jurisdiction in Portland, at Astoria, Oregon. I went down to see my grandfather, who was on his sickbed, and I got down there and I was picked up for suspicion of a service station holdup."

The trial court's statement in overruling the objection was clearly error.

The subject of the revocation of the defendant's parole was not in anywise referred to by the defendant on direct examination, and was not thereby open for cross-examination.

ORS 45.600 provides as follows:

>  "A  witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."

To permit an examination as to the cause of the revocation of a parole would be the equivalent of granting the right to inquire into arrests and particular wrongdoing, thus nullifying the prohibition of the statute which limits the impeachment to proof of convictions. *State v. Rollo,* 221 Or 428, 351 P2d 422.

The particular question, when reduced to substance, was the equivalent of asking the defendant what particular wrong he had committed to cause a revocation of

his parole. Defendant's impeachment in this manner was highly prejudicial. He had admitted the assault and only denied the intent to rob. Whether his account of what transpired, in part corroborated by the state's witnesses, was to be believed was the controlling feature of his defense.

In our opinion, this error affected the substantial right of the defendant and prevented him from being accorded a fair trial.

The judgment is reversed for a new trial.