Argued March 5, reversed and remanded April 1, 1975

# SMITH, *Appellant, v.* DURANT, *Respondent.*

534 P2d 955

*James J. Damis,* Portland, argued the cause and filed the briefs for appellant.

*Walter J. Cosgrave,* Portland, argued the cause for respondent. With him on the brief were Cosgrave & Kester, Portland.

TONGUE, J.

This is an action for damages for personal injuries sustained in an automobile accident involving a collision between plaintiff's car and defendant's car on a two-lane road. The case was tried before a jury, which returned a verdict in favor of defendant. Plaintiff appeals.

At the beginning of the trial defendant's attorney conceded that defendant was negligent, but contended that plaintiff's recovery was barred by his contributory negligence.[1] Plaintiff testified that defendant's car was "straddling" the center line when it hit his car. Defendant testified, on the contrary, that he was on his own side of the road. The principal issue to be decided by the jury was whether defendant or plaintiff or both were over the center line. Thus, although there was other evidence on that issue, the credibility of the testimony of both parties was of vital importance.

Plaintiff's primary assignment of error is that the trial court erred in refusing to permit plaintiff to impeach the defendant as a witness by offering in evidence the records of two prior convictions of the defendant for reckless driving, as provided by ORS 45.600 and as recently held by this court to be proper in *Marshall v. Martinson,* 268 Or 46, 518 P2d 1312 (1974).

Defendant contends that *Marshall* should be "clarified" and "qualified," if not reconsidered and overruled, and should not be applied to this case because prejudice may result in that the jury may reason that because there was evidence of defendant's drink-

---

[1] The accident occurred prior to the effective date of ORS 18.470 providing for comparative negligence.

ing before this accident and because defendant had been guilty of reckless driving on two previous occasions, it is probable that he was also driving recklessly at the time of this accident.

1. *The contention that the admission in evidence of a prior conviction for reckless driving could result in unfair prejudice.*

The provisions of what is now ORS 45.600 were originally enacted by the Oregon legislature in 1861 (§ 830 of Deady's Code 1845-64) and read as follows:

> "*Impeachment of adverse witness.* A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but *he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime.*" (Emphasis added)

In considering the interpretation and application of ORS 45.600 it must be kept in mind that although this is a civil case, the rule permitting impeachment by proof of a prior conviction of any crime is one which has perhaps a greater impact in criminal cases.

It may be true, as contended by the defendant, that a defendant in either a criminal or civil case who is so impeached may be "prejudiced" in that the jury may infer from such prior conviction that he is a "bad man" and thus more likely to have committed the act charged.[2] However, that danger would still be present

---

[2] The dissent by O'Connell, C. J., in Marshall v. Martinson, 268 Or 46, 518 P2d 1312 (1974), starts with the contention that conviction of DUIL was not "probative" of the defendant's credibility and would surely prejudice him in the eyes of the jury.

even if the scope of impeachment were limited to crimes involving "moral turpitude" or "dishonesty," as proposed by the dissent in *Marshall.* Thus, in a prosecution for any crime involving "moral turpitude" or "dishonesty," such as forgery, the defendant could still be impeached by proof of prior convictions for the same crime and there would still be the possibility that the jury may infer that because he was previously guilty of crime it is more likely that he is guilty of the subsequent crime.

■ "Prejudice" is possible in both civil and criminal cases whenever a witness is impeached by the proof of conviction of any crime. However, the question of whether and how to limit the scope of permissible impeachment for prior conviction of crime is one of public policy. In this instance, the Oregon legislature not only has power to legislate but has adopted a statute on this subject. We can neither repeal nor amend that statute, but only endeavor to see that it is applied in accordance with the intent of the legislature.

In *Marshall,* as in our previous decisions, we held that where the legislature provided that a witness may be impeached by proof of the conviction of "a crime," without limitation or qualification, we were required to give those words their plain and natural meaning, so as to extend to "any crime," whether a felony or misdemeanor. If this court is to undertake to go behind the terms of this statute in an effort to seek the "true" intent of the legislature, we must still bear in mind that in considering matters which are the objects of legislation, as in this case, such questions of public policy are primarily questions to be decided by the legislature, rather than by the courts.

It follows that this court must give considera-

tion to the reasons why, as a matter of public policy, the Oregon legislature may have deliberately chosen to adopt a statute permitting impeachment of a witness by proof of prior conviction of *any crime* in both criminal and civil cases.

Suppose, to take a hypothetical case, that a defendant is charged with the crime of assault and testified that at the time of the assault he was playing cards with two friends; that both of his friends appear as witnesses and testify that they were playing cards with him at that time, and that all three had been previously convicted for assault on at least three previous occasions. To adopt the reasoning of the dissent by O'CONNELL, C. J., in *Marshall,* would require us to hold that in 1861 the Oregon legislature, by adopting a statute permitting impeachment of a witness for "a crime," intended to withhold from the jury in such a case the fact that both the defendant and his alibi witnesses had been previously convicted for assault because it is not a crime involving "moral turpitude." *Ex parte Mason,* 29 Or 18, 22, 43 P 651 (1896). If, however, the assaults resulted in robbery, a crime involving moral turpitude, the fact that the defendant and his three alibi witnesses had been previously convicted of robbery could be shown to impeach them, according to the reasoning of the dissent, despite the fact that the jury might infer that having been previously convicted of robbery it is more likely that defendant was guilty of the subsequent robbery.

We do not believe that we can divine such an intent from the legislative history of ORS 45.600, for reasons discussed separately below. On the contrary, we cannot say that in 1861 it would have been unreasonable, as a matter of public policy, for the legis-

lature to deliberately provide that in both criminal and civil cases in which the defendant testified on his own behalf the jury, in determining the credibility of his testimony, may consider whether he has been previously convicted of *any* crime, regardless of whether the crime is one involving "moral turpitude." The legislature may have reasoned:

(1) That, as stated in the frequently quoted case of *State v. Duke*, 100 NH 292, 293, 123 A2d 745, 746 (1956):

"No sufficient reason appears why the jury should not be informed what sort of person is asking them to take his word. In transactions of everyday life, this is probably the first thing they'd wish to know."

(2) That in a criminal case a defendant who is a "three-time-loser" is more apt to lie in an effort to avoid a further conviction, with a heavy penalty, than a defendant with a "clean" record.

(3) That this is true whether the previous convictions were for crimes involving "moral turpitude" or for other crimes.

We may disagree with these reasons. In our opinion, however, we cannot properly say that the legislature, in adopting a statute which, by its terms, permits the impeachment of a witness by proof of conviction of "a crime," did not consider these and other similar reasons in deciding, as a matter of public policy, how wide or how narrow should be the scope of the statute.

2. *The contention that we should overrule our previous decisions because they "rest upon an unsatisfactory analysis of the statute."*

■ This court has previously held that what is

now ORS 45.600, providing that a witness may be impeached by proof "that he has been convicted of a crime," is not limited to crimes involving "moral turpitude" or "dishonesty." In *Marshall* we repeated, with approval, the following statement in *State v. Rush*, 248 Or 568, 570-71, 436 P2d 266 (1968):

"From the time of the decision in State v. Bacon, *supra* [13 Or 143, 9 P 393 (1886)], this court has consistently held that ORS 45.600 permits, as it clearly states, that 'A witness may be impeached by the party against whom he has called * * * by his examination or by the record of the judgment, that he has been convicted of a crime.' Whatever the logic may be of arguing that no evidence should be received concerning conviction of a crime which would not by its nature be thought of as a basis for questioning credibility, the rule is nonetheless clearly established. [Cases cited]"

The previous decisions by the court to the same general effect are numerous.[3]

[3] See State v. Bacon, 13 Or 143, 145, 9 P 393 (1886); State v. Reyner, 50 Or 224, 232, 91 P 301 (1907); State v. Deal, 52 Or 568, 570, 98 P 165 (1908); State v. Isley, 62 Or 241, 244, 124 P 636 (1912); State v. Newlin, 84 Or 323, 326, 165 P 225 (1917); State v. Rathie et al, 101 Or 339, 359, 199 P 169, 200 P 790 (1921); State v. Gilbert, 138 Or 291, 293, 4 P2d 923 (1932); State v. Jordan, 146 Or 504, 520, 26 P2d 558, 30 P2d 751 (1934); State v. Ede, 167 Or 640, 644, 117 P2d 235 (1941); State v. Wilson, 182 Or 681, 697, 189 P2d 403 (1948); State of Oregon v. McCowan, 203 Or 551, 559, 280 P2d 976 (1955); State v. Rollo, 221 Or 428, 437, 351 P2d 422 (1960); State v. Ponton, 240 Or 30, 32, 399 P2d 30 (1965); State v. Gustafson, 248 Or 1, 5, 432 P2d 323 (1967); State v. Rush, 248 Or 568, 570-71, 436 P2d 266 (1968); and Marshall v. Martinson, *supra* note 2 at 51.

Cf. State v. Crawford, 58 Or 116, 117, 113 P 440 (1911); Triphonoff v. Sweeney, 65 Or 299, 309, 130 P 979 (1913); Redsecker v. Wade, 69 Or 153, 164, 134 P 5, 138 P 485 (1914); State v. Jensen, 70 Or 156, 159, 140 P 740 (1914); State v. Brennan, 111 Or 479, 484, 227 P 275 (1924); State v. Motley et al, 127 Or 415, 419, 272 P 561 (1928); State v. Goodloe, 144 Or 193, 199, 24 P2d 28 (1933); State v. Cunningham, 173 Or 25, 53, 144 P2d 303 (1943); State v. Herrera, 236 Or 1, 6, 386 P2d 448 (1963); and State v. Townsend, 237 Or 527, 533, 392 P2d 459 (1964).

Defendant contends, however, that ORS 45.600 is "declaratory of the common law"; and that at common law witnesses were disqualified only if convicted of "infamous crimes." Similarly, the dissent by O'CONNELL, C. J., in *Marshall*, contended that this court should have overruled this entire line of cases because "they rest upon an unsatisfactory analysis of the statute," in that ORS 45.600 is recognized by some of such cases as "declaratory of the common law"; and that at common law witnesses were disqualified only for "infamous crimes" or those involving "moral turpitude," with the result that "it seems fair to assume that the legislature * * * intended to retain for the purposes of impeachment, the common law distinction between convictions which affect credibility and convictions which do not."

In *Marshall* we rejected that contention. We again reject that contention for two reasons:

(1) Upon examination of the common law as of 1861, we find that there is no proper basis to assume that the Oregon legislature intended the statute to be limited to persons convicted of crimes involving "moral turpitude."

■ (2) Our prior decisions do not support the contention that in enacting that statute the legislature intended to perpetuate a common law rule relating to impeachment for conviction of crimes, but held that by the adoption of that statute the Oregon legislature intended to change the common law.

A. *There is no proper basis to assume that the Oregon legislature, in enacting ORS 45.600, intended that its application be limited to crimes involving "moral turpitude."*

■ At common law, a person convicted of *any felony* was completely incompetent to testify as a witness. McCormick on Evidence 84, § 43 (2d ed 1972). Several common law felonies had nothing to do with "moral turpitude." It has been said, however, that "The extension of the * * * disqualification to a felon seems to have its origin in the concept of increased penalty rather than that of untrustworthiness." Perkins on Criminal Law 16-17 (2d ed 1969).

And even if, at one time, the common law disqualification might have been limited to crimes involving "moral turpitude," so as to "affect credibility," at the time of the subsequent enactment of statutes that eliminated the disqualification, many crimes which had little or nothing to do with "moral turpitude" were included among those which rendered a witness incompetent to testify. Furthermore, as observed by McCormick, *supra* at 85, "the common law definition of disqualifying crimes was not very precise."

According to Greenleaf,[④] A Treatise on the Law of Evidence 420-21, § 373 (1846):

"§ 373. It is a point of no small difficulty to determine precisely the crimes which render the perpetrator thus infamous. The rule is justly stated to require, that 'the *publicum judicium* must be upon an offence, implying such a dereliction of moral principle, as carries with it a conclusion of a total disregard to the obligation of an oath.' But

---

[④] As noted by O'Connell, C. J., in Cook v. Michael, 214 Or 513, 523, 330 P2d 1026 (1958):

"In examining the history of our own code of Evidence we find the following notation in Deady's Code (General Laws of Oregon 1845-1864), page 315:

'The rules and principles of the law of evidence as embodied and codified in this and the following two chapters are mainly condensed and extracted from Greenleaf's Treatise on the Law of Evidence.' "

the difficulty lies in the specification of those offences. The usual and more general enumerating is, *treason, felony,* and the *crimen falsi.* \* \* \* But the extent and meaning of the term *crimen falsi,* in our law, is nowhere laid down with precision. \* \* \* And from these decisions, it may be deduced, that the *crimen falsi* of the common law not only involves the charge of falsehood, but also is one which may injuriously affect the administration of justice, by the introduction of falsehood and fraud. At least it may be said, in the language of Sir William Scott, 'so far the law has gone affirmatively; and it is not for me to say where it should stop, negatively.' "

See also 2 Wigmore on Evidence 612-13, § 520 (3d ed 1940), quoting the foregoing. Wigmore, *supra* at 610-11, also quotes from a discussion of this problem in Bentham, Rationale of Judicial Evidence (Bowring's ed 1827), concluding:

"\* \* \* If the legislator had his choice of witnesses upon every occasion, and witnesses of all sorts in his pocket, he would do well not to produce any, upon any occasion, but such over whose conduct the tutelary motives exercised despotic sway; in a word, to admit no other men for witnesses than perfect men. But perfect men do not exist; and if the earth were covered with them, delinquents would not send for them to be witnesses to their delinquency. *In such a state of things, then, the legislator has this option, and no other; to open the door to all witnesses or to give license to all crimes.* \* \* \*" (Emphasis added)

It thus appears that at the time of the adoption in 1861 of what is now ORS 45.600 the common law rule relating to disqualification of witnesses for conviction of crimes was not only in a state of considerable uncertainty, but was the subject of considerable criticism. As a result, the Oregon legislature

had good reason to not only recognize these difficulties, but to simplify and clarify the problem by abolishing the rule of incompetency for conviction of certain crimes and by substituting in its place a rule of impeachment by proof of the conviction of *any* crime, leaving to the wisdom of the jury, under proper instructions, the weight to be accorded the conviction depending upon the type of crime involved.

In our opinion, it is more reasonable to assume that this was what the legislature intended when in 1861 it provided that a witness may be impeached by proof of the conviction of "a crime," than it is to assume that by the term "a crime" the legislature intended to perpetuate all of the uncertainty and criticism of the common law.

There is nothing in the Deady Code to suggest to the contrary. The rule of incompetency was eliminated by § 700 (p 324) entitled "Definition and Competency of Witnesses."⑨ The provision of the Deady Code relating to the impeachment by proof of the conviction of a crime is in a separate chapter (ch 9) and

---

⑨ Section 700 of the Deady Code provided as follows:

"Sec. 700. All persons without exception, except as otherwise provided in this title, who, having organs of sense can perceive, and perceiving can make known their perceptions to others, may be witnesses. Therefore neither parties, nor other persons who have an interest in the event of an action, suit or proceeding, are excluded; *nor those who have been convicted of crime;* nor persons on account of their opinions on matters of religious belief; *although in every case except the latter, the credibility of the witness may be drawn in question, as provided in section 673."* (Emphasis added)

Section 673 provides as follows:

"Sec. 673. A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which he testified, by the character of his testimony, or by *evidence affecting his character* or motives, or by contradictory evidence; and where the trial is by the jury, they are the exclusive judges of his credibility." (Emphasis added)

section (§ 830) which makes no reference to § 700, but provides as follows:

> "Sec. 830. A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief, but not by evidence of particular wrongful acts; except that *it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a crime.*" (Emphasis added)

For all of these reasons, we again reject the contention that this court must "assume that the legislature * * * intended to restrict the scope of impeachment" under § 830 to the conviction of crimes involving "moral turpitude."

B. *Our prior decisions do not support the contention that ORS 45.600 was intended by the legislature to perpetuate a common law rule relating to impeachment for conviction of crime.*

In *State v. Bacon,* 13 Or 143, 145, 9 P 393 (1886), the first case decided by this court in which this question was presented, the defendant was asked "if he had not been convicted of a crime." The common law rule was that such a conviction could only be shown by a copy of the judgment, not by questioning the witness. Referring to § 830 of the Deady Code, particularly the language that "it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a crime," the court said:

> "[T]*he Code has worked a change in the common-law rule,* and under the provisions of our section, as it includes both felonies *and misdemeanors,* the question was admissible, and there was no error in the ruling of the court." (Emphasis added)

Thus, although the question was not directly presented, the court in *Bacon* stated not only that § 830 changed the common law, but that it included "misdemeanors," without any attempt to qualify that term, much less to limit it to those involving "moral turpitude."

Defendants and the dissent by O'CONNELL, C. J., in *Marshall*, rely on the subsequent case of *State of Oregon v. Hunsaker*, 16 Or 497, 19 P 605 (1888), as holding that the provisions of what was § 830 of the Deady Code "introduce no new principles. They are simply declaratory of the common law on *that subject*" (emphasis added), citing *Sheppard v. Yocum and DeLashmutt*, 10 Or 402, 3 P 824 (1882), and 1 Greenleaf on Evidence § 462.

In *Hunsaker*, however, there was no attempt to impeach a witness by proof of conviction of a crime, but only by proof of prior contradictory statements, a subject not covered by § 830, but by § 831. The court held only that "These sections [§ 830 and § 831] introduce no new principles," but are "declaratory of the common law on *that subject*." As previously noted, however, § 830 clearly made "new law" by removing the disqualification of a witness for conviction of a crime and by providing that a witness may be impeached by proof of conviction of a crime. Moreover, both of the authorities cited in *Hunsaker: Sheppard v. Yocum and DeLashmutt, supra,* and Greenleaf, *supra,* § 462 (in particular, § 462(a)), deal with impeachment by proof of prior inconsistent statements, rather than by proof of prior conviction of a crime.

Similarly in *State v. Motley*, 127 Or 415, 272 P 561 (1928), also cited by defendant, the method of impeachment involved was not for conviction of a

crime, with the result that its statement that what was previously § 830 of the Deady Code was "declaratory of the common law," citing *Hunsaker,* adds nothing.

In *State v. Ede,* 167 Or 640, 117 P2d 235 (1941), the court again stated that what was previously § 830 of the Deady Code was "declaratory of the common law," citing *Hunsaker* and *Motley.* The issue in that case, however, was whether prior conviction of a crime could be proved by the record of the judgment, which was the practice at common law (as recognized in *Bacon*) and there was no issue as to what crimes could be proved for the purpose of impeachment.

It follows that none of these cases overrules the law as stated in *State v. Bacon, supra,* to the effect that § 830 "worked a change in the common law rule" and includes "both felonies and misdemeanors."

It is true that courts in some other states have held under the statutes in those particular states a witness can be impeached only for conviction of crimes involving "moral turpitude." However, there is a distinct split in the authorities on that question and several courts have followed the same rule adopted by this court, beginning with *State v. Bacon, supra,* in 1886.[6]

For these reasons, we again reject the contention that by the adoption of § 830 of the Deady Code the Oregon legislature intended to perpetuate, rather than to change, the common law rules relating to the impeachment of a witness by proof of the conviction of crimes.[7]

---

[6] For reference to those cases see dissenting opinion by O'Connell, C. J., in Marshall v. Martinson, *supra* note 2, at 62 n. 6.

[7] Defendant also contends that in enacting § 830 of the Deady

3. *The contention that the impeachment of a witness by proof of the prior conviction of a crime should be left to the discretion of the trial court.*

■ Defendant also contends that there is precedent in the decisions of this court for the adoption of a rule that the question whether a witness may be impeached by proof of the prior conviction of a crime, including the balancing of the possible prejudice against the probative value of such proof, should be left to the discretion of the trial court.[9]

In *State v. Bacon, supra,* one of the two Oregon cases cited in support of this contention, questions were permitted by the trial court on cross-examination of the witness asking not whether he had been *convicted* of a crime, but whether he had ever been *arrested.* This court pointed out (at 151) that "until convicted, the witness was presumed innocent." Nevertheless, after reference (at 155) to the interests of "liberality allowed on cross-examination, to promote the ends of justice" it was held (at 156) that the trial court, in its discretion, "may exclude *such* questions, or allow them, as the ends of justice may seem to require" and affirmed the trial court.

Similarly, in *Redsecker v. Wade,* 69 Or 153, 134 P 5, 138 P 485 (1914), the other case cited in support of this contention, it appears (at 161) that "[c]ounsel

Code in 1861 "the legislature could not have intended that a traffic violation be considered a 'crime' since the first motor vehicle code was not enacted until 1911" and because "criminal penalties for * * * reckless driving were not specifically enacted until 1931."

Such a contention proves too much. The application of ORS 45.600 is not limited to crimes listed in the Deady Code.

[9] Defendant also makes reference to the dissenting opinions by O'Connell, C. J., and Denecke, J., in Marshall v. Martinson, *supra* note 3, to the same effect.

for the plaintiff was permitted by the trial court [on cross-examination] to ask her [the defendant] many questions as to *what names she had borne, what she had done, and as to whether she had been convicted of a crime, etc.*" It was held that "In the exercise of a sound discretion, the trial court could lawfully allow this, for the purpose of discrediting the witness," quoting from the syllabus in *State v. Bacon, supra,* that "[s]ubject to the sound discretion of the court, a witness may be compelled to answer *any question* which tends to test his credibility.  *  *  *"

Thus, it appears that in neither *Bacon* nor *Redsecker* was this court considering the application of the statutory provisions of ORS 45.600 permitting impeachment by proof of *conviction* of a crime. Instead, these cases hold that on cross-examination of a witness the trial court could properly permit proof of even an *arrest* or "any question" which tended to affect the credibility of the witness. In both of those cases the test of trial court discretion was discussed only in that context. There was no suggestion in either case that the trial court had any discretion to *deny* the impeachment of a witness by proof of the prior *conviction* of a crime, as specifically provided by ORS 45.600 and as held by this court in many cases.

Moreover, in *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975), this court recently rejected the contention that in criminal cases the admissibility of evidence of other crimes by the defendant, when offered as substantive evidence, should be left to the discretion of the trial judge by balancing probative value against danger of prejudice. In so holding we said (at 393):

"We believe, however, that this problem is of such importance to both the state and to the defendants in criminal cases so as to demand a more

definite rule and one conducive to uniformity in rulings by trial courts than would be likely to follow from the adoption of the rule advocated by the Court of Appeals, to the effect that the admissibility of evidence of other crimes, including the balancing of probative value against danger of prejudice, is a matter to be left to the discretion of the trial court in each case, subject only to reversal where 'clearly wrong.' "⑨

Under a rule that would leave it to the discretion of the trial judge to determine the admissibility of proof of the conviction of a crime to impeach a witness, the same evidence admitted in one court might well be excluded by another. Thus, the result in a case might well depend upon what court or judge it is tried before.

The test which would limit impeachment for prior conviction of crimes to those involving "moral turpitude" is also subject to criticism for uncertainty, as previously noted, and is a rule which would require either this court or the legislature to prepare and catalog the crimes which are considered to involve

---

⑨ In so holding in State v. Manrique, 271 Or 201, 211, 531 P2d 239 (1975), we also quoted as follows from 2 Wigmore on Evidence 200-01, § 302 (3d ed 1940), in discussing this problem:

" "* * * Some judges incline to treat the judicial test of probative value as identical with the common-sense test, and to admit such instances as bear a similarity liberally interpreted by the standard of every-day reasoning. Other judges set their faces firmly against every instance which is not on all fours with the offence in issue, regardless of the consideration that justice consists quite as much in protecting the public against evil doers as in showing mercy to those whose guilt has been more or less skilfully concealed. * * *' "

In State v. Manrique, *supra* at 213, n. 4, we also again referred to our recent decision in *Marshall* by the following footnote:

"For discussion of impeachment by conviction of a crime, see ORS 45.600, and Marshall v. Martinson, 268 Or 46, 518 P2d 1312 (1974)."

"moral turpitude." As stated in McCormick on Evidence 83, § 43 (2d ed 1972):

> "* * * Under the rule requiring moral turpitude, it seems questionable whether the creation of a detailed catalog of crimes involving 'moral turpitude' and its application at the trial and on appeal is not a waste of judicial energy in view of the size of the problem. Moreover, shifting the burden to the judge's discretion raises problems as to the adequacy of his information or basis upon which to exercise his discretion. A rule involving a clear and certain definition has advantages in administration. * * *"

4. *The possible need for revision of ORS 45.600.*

The dissent in *Marshall* by O'CONNELL, C. J., concludes (at 64) with this statement:

> "Our disagreement on the proper interpretation of ORS 45.600 suggests that there is the need for its *revision*. The proposal of Rule 21 of the Uniform Rules of Evidence provides a good solution: 'Evidence of the conviction of a witness for a crime not involving dishonesty or false statements shall be inadmissible for the purpose of impairing his credibility * * *.' Uniform Rules of Evidence, Rule 21, 9A ULA 607 (1965)." (Emphasis added)

To adopt such a rule would, of course, require a "revision" of ORS 45.600 because there is no basis at common law or otherwise to support a contention that in 1861 the Oregon legislature intended to exclude from the application of that statute "crimes not involving dishonesty or false statement."

■ We do not disagree with the view that there may be a "need for revision" of ORS 45.600. We also do not disagree with the contention that the test proposed by Rule 21 may be preferable to the even greater uncertainties of the tests of "moral turpitude"

662

and "trial court discretion."[10] We do not believe, however, that such a "revision" of ORS 45.600 can properly be made by this court under the guise of the "interpretation" of that statute.

■ A committee under the auspices of the Code Revision Commission is now in the process of preparing a new proposed Code of Evidence for submission to the next session of the legislature. If ORS 45.600 is to be "revised," whether by the adoption of Uniform Rule 21 or otherwise, we believe that such a change should be accomplished by that means rather than by the decision of this court in this case, particularly after so recently reaffirming in *Marshall* such a well established rule and one of such long standing.[11]

[10] Another alternative would be the adoption of a rule to the effect that upon the impeachment of a witness for the prior conviction of a crime (however that term may be defined or limited) the nature of the crime could not be revealed to the jury by the party impeaching the witness unless the witness denies having been previously convicted of a crime. Thus, except in the event of such a denial, the impeachment would be limited to the more neutral fact of the commission of "a crime." This would minimize the danger of prejudice from the fact that the previous crime involved conduct of the same nature as that for which the party is charged in the subsequent trial and would leave it to the party calling the witness to decide whether, on re-examination, to reveal the nature of that crime in the course of explaining any mitigating circumstances relating to the prior conviction. Such a rule, of course, would also require amendment of ORS 45.600, which now expressly permits impeachment of a witness by offer of the record of the judgment of conviction of a crime.

[11] Defendant also contends that because plaintiff offered as a single "offer of proof" two exhibits to prove two prior convictions of defendant for reckless driving and because it appeared from one of such exhibits that one of the convictions had been reduced from a charge of driving under the influence of liquor, so as to make that exhibit inadmissible, the trial court acted within its discretion in rejecting both exhibits.

In support of that contention defendant says that we may properly affirm a trial court for excluding an exhibit if part is inadmissible, even on general objection, citing Prouty L & B Co. v. J. H. Cogan et al, 101 Or 382, 388, 200 P 905 (1921), and Freed-

For these reasons we must reverse the judgment of the trial court and remand this case for a new trial.

O'CONNELL, C. J., dissenting.

I dissent for the reasons stated in my dissent in *Marshall v. Martinson*, 268 Or 46, 59, 518 P2d 1312, 1318 (1974).

DENECKE, J., joins in this dissent.

_____

man v. Cholick et ux, 233 Or 569, 379 P2d 575 (1963), among other authorities.

In this case, however, two separate exhibits were offered. And even though they were offered at the same time, if one of them were admissible under ORS 45.600 plaintiff was entitled to have it received in evidence and it was error for the trial court to exclude it.

Our disposition of plaintiff's first assignment of error makes it unnecessary to consider plaintiff's remaining two assignments of error, other than to say that, in our opinion, neither of such assignments were sufficient to constitute prejudicial error requiring a new trial.